**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMES NERO,

        Plaintiff,

    v.

NURSE BARNA, *et al.*,

        Defendants.

No. 4:25-CV-02412

(Chief Judge Brann)

**MEMORANDUM OPINION**

**APRIL 3, 2026**

Plaintiff James Nero filed the instant *pro se* civil rights lawsuit alleging that prison officials at the United States Penitentiary, Canaan (USP Canaan), in Waymart, Pennsylvania, were deliberately indifferent to his serious medical needs. His constitutional tort claims seeking money damages fall under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because Nero fails to state a claim for relief and granting leave to amend would be futile, the Court will dismiss this *Bivens* action with prejudice.

## I.    BACKGROUND

In December 2025, Nero lodged the instant civil rights lawsuit in this Court.[1] When he filed suit, Nero was incarcerated at the Federal Bureau of Prisons (BOP) Medical Center for Federal Prisoners (MCFD) in Springfield, Missouri,[2] where he

---

[1]    Doc. 1.

[2]    *See id.* at 1.

is currently housed.  Nero filed this action for money damages, presumably under

*Bivens v. Unknown Named Agents of the Federal Bureau of Narcotics*, against

federal officials at USP Canaan, where he was previously incarcerated.[3]

In his lawsuit, Nero alleges that he was suffering from a stomach ulcer,

weight loss, hip pain, and other serious medical issues and was treated improperly

by Nurse Barna, Nurse Carey, and an unidentified "food service administrator."[4]

He maintains that these federal officials were deliberately indifferent to his serious

medical needs in violation of the Eighth Amendment.[5]  Nero seeks $1,500,000 in

compensatory and punitive damages.[6]

Because Nero's claims represent an extension of *Bivens* and that extension is

not warranted, the Court will dismiss Nero's complaint with prejudice.

## II.    STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se*

prisoner complaints targeting governmental entities, officers, or employees.[7]  One

basis for dismissal at the screening stage is if the complaint "fails to state a claim

upon which relief may be granted[.]"[8]  This language closely tracks Federal Rule

---

[3]   *See id.* at 1, 2, 6.  Although Nero checked a box on his form complaint asserting that his civil lawsuit is filed under the Federal Tort Claims Act (FTCA), (*see* Doc. 1 at 1), his complaint plainly alleges *constitutional* tort claims, which are not cognizable under the FTCA.  *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994).

[4]   *See id.*

[5]   *See id.* at 2, 5.

[6]   *See id.* at 6.

[7]   *See* 28 U.S.C. § 1915A(a).

[8]   *Id.* § 1915A(b)(1).

of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[9]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[10]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[11]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[12]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[13]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[14]  Second, the court should distinguish well-

---

[9]   *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

[10]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[11]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[12]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[13]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[14]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[15]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[16] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[17]

Because Nero proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[18]  This is particularly true when the *pro se* litigant, like Nero, is incarcerated.[19]

## III.   DISCUSSION

Upon review of the claims in Nero's complaint, it is clear that dismissal is required.  Nero's Eighth Amendment medical indifference claims represent an extension of *Bivens*, and that extension is not warranted under the present circumstances.  To the extent that Nero seeks to pursue a claim or claims under the Federal Tort Claims Act, he is free to do so in a separate, appropriate lawsuit after he has administratively exhausted those claims.

---

[15]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[16]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[17]   *Iqbal*, 556 U.S. at 681.
[18]   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[19]   *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### A.   *Bivens* Claims

In 1971, the Supreme Court of the United States held that, "even absent statutory authorization, it would enforce a damages remedy" to compensate individuals who experienced violations by federal officers of the Fourth Amendment's prohibition against unreasonable searches and seizures.[20] Subsequently, the Court extended the *Bivens* cause of action in two cases involving other types of constitutional violations.  First, in *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), the Court held that the Fifth Amendment's Due Process Clause provided an implied damages remedy to an administrative assistant claiming that a Congressman had discriminated against her based on gender.  Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment implied a cause of action for damages against federal prison officials who had failed to provide adequate medical treatment to an asthmatic inmate.[21] "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."[22]

Over the years that followed, the Supreme Court has "consistently refused to expand *Bivens* actions beyond these three specific contexts."[23]  The Supreme Court

---

[20]   *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017); *Bivens*, 403 U.S. at 397.
[21]   *See Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980).
[22]   *Abbasi*, 582 U.S. at 131; *see also Egbert v. Boule*, 596 U.S. 482, 492 (2022).
[23]   *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020).

has specifically noted that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."[24]

In *Ziglar v. Abbasi*, the Court provided a "restrictive, two-step framework for courts to follow when analyzing *Bivens* claims."[25]  First, courts must determine whether the case presents a "new context," *i.e.*, if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."[26]  The Supreme Court has defined "new context" broadly,[27] explaining that "even a modest [*Bivens*] extension is still an extension."[28]  A *Bivens* claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."[29]

If the case presents a new context, courts must then consider whether special factors counsel against extending the *Bivens* remedy.[30]  If so, the court must reject the requested extension.[31]  The Supreme Court has clarified that courts are required "to ask whether 'the Judiciary *is at least arguably less equipped* than Congress' to weigh the costs and benefits of a damages action."[32]  If the court "ha[s] reason to pause before applying *Bivens* in a new context or to a new class of defendants,"

---

[24]  *Abbasi*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).
[25]  *Mack*, 968 F.3d at 317.
[26]  *Id.* (alteration in original) (quoting *Abbasi*, 582 U.S. at 139).
[27]  *See id.*
[28]  *Abassi*, 582 U.S. at 147.
[29]  *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020).
[30]  *See Mack*, 968 F.3d at 317 (citing *Abbasi*, 582 U.S. at 136).
[31]  *See id.* (citing *Hernandez*, 589 U.S. at 102).
[32]  *Fisher v. Hollingsworth*, 115 F.4th 197, 205 (3d Cir. 2024) (quoting *Egbert*, 596 U.S. at 492).

then special factors counseling hesitation exist.[33]  There may be many special factors, but two are "particularly weighty: the availability of an alternative remedial structure and separation-of-powers concerns."[34]  Indeed, the United States Court of Appeals for the Third Circuit has held that the existence of an alternative remedial structure—like the Federal Bureau of Prisons' Administrative Remedy Program (ARP)—is a "special factor" that can create a new context at step one of the two-step analysis.[35]

Nero's Eighth Amendment medical indifference claims present a new context and special factors counsel against extending the *Bivens* remedy here. First, although Nero is asserting an Eighth Amendment medical indifference cause of action, like the claim raised in *Carlson*, his facts present a new context.  In *Carlson*, an inmate's family sued federal prison officials, alleging the inmate had died from a treatable asthma attack after medical providers failed to give him competent medical attention for eight hours, administered contraindicated drugs that made his asthma attack more severe, and substantially delayed his transfer to

---

[33]  *Hernandez*, 589 U.S. at 102.

[34]  *Mack*, 968 F.3d at 320 (internal quotation marks omitted).

[35]  *See Muniz v. United States*, 149 F.4th 256, 263-64 (3d Cir. 2025); *Kalu v. Spaulding*, 113 F.4th 311, 327-28 (3d Cir. 2024).  *But see Muniz*, 149 F.4th at 266-67 (Restrepo, J., concurring) (disagreeing with approach taken in *Kalu v. Spaulding* and observing that Seventh, Ninth, and Tenth Circuits consider "alternative remedial structures" only at step two, not as part of step one, which better aligns with the Supreme Court's approach in *Egbert* and *Goldey v. Fields*, 606 U.S. 942 (2025)).

an outside hospital.[36]  The plaintiff in *Carlson* further alleged that the federal officials' deficient medical care was motivated in part by racial animus.[37]

Nero, on the contrary, asserts that USP Canaan medical providers—among other shortcomings—failed to properly address his stomach ulcer, hip pain, weight loss, arthritis, and other medical issues.  He claims that Defendants ignored his symptoms or attempted to treat them with minimal medical intervention.  Clearly, the facts in *Carlson* bear little resemblance to the facts of the case at bar, thus presenting a new *Bivens* context.  Moreover, even if Nero's ailments, injuries, deficient-treatment allegations, and targeted defendants were identical to those in *Carlson*, the availability of the BOP's administrative remedy program—which was not in existence when *Carlson* was considered by the Supreme Court—creates a new *Bivens* context here.[38]

The second step in the *Bivens* analysis asks whether special factors counsel against extending the *Bivens* remedy.  The Court answers this question in the affirmative.  Specifically, a *Bivens* extension is unwarranted here primarily because there are multiple alternative remedies available.

As the Third Circuit has repeatedly noted, the availability of the BOP's administrative remedy program often provides an alternative to a federal *Bivens*

---

36    *See Carlson*, 446 U.S. at 16 n.1.
37    *See id.*
38    *See Muniz*, 149 F.4th at 263-64; *Kalu*, 113 F.4th at 327-28.

8

lawsuit.[39]  Through the administrative remedy process, federal prisoners "can alert the BOP to unconstitutional officer conduct and policies and prevent such constitutional violations from recurring."[40]  And even if Nero's attempts to resolve his medical care disputes through the administrative process were ultimately unsuccessful, he had access to at least "some redress," and therefore the Court finds—as in *Mack*—that the BOP's administrative remedy program offers a "convincing reason" to refrain from extending *Bivens* to claims like those raised by Nero.[41]

Additionally, the possibility of relief under the Federal Tort Claims Act (FTCA)[42]—"a statutory scheme for torts committed by federal officers"—"weighs against inferring a new cause of action" under *Bivens*.[43]  That remains true even if the FTCA fails to "provide the exact same kind of relief *Bivens* would."[44]  In this

---

[39]  *See Muniz*, 149 F.4th at 264-65; *Dongarra v. Smith*, 27 F.4th 174, 181 (3d Cir. 2022); *Mack*, 968 F.3d at 320-21.

[40]  *Mack*, 968 F.3d at 321.

[41]  *See id.* (citations omitted); *see also Abbasi*, 582 U.S. at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); *Muniz*, 149 F.4th at 265 ("At bottom, Muniz's *Bivens* claim fails because an alternative remedy existed and was made available to him.").

[42]  28 U.S.C. §§ 1346(b), 2671-2680.

[43]  *Oliva v. Nivar*, 973 F.3d 438, 443-44 (5th Cir. 2020); *see also Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *Jones v. Bradley*, No. 4:21-CV-00026, 2023 WL 2088430, at *3 (M.D. Pa. Feb. 17, 2023) (Brann, C.J.) (noting that alternative remedy provided by FTCA counsels against *Bivens* extension); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020) (collecting cases).

[44]  *Oliva*, 973 F.3d at 444 (citing *Minneci v. Pollard*, 565 U.S. 118, 129 (2012)); *see also Xi v. Haugen*, 68 F.4th 824, 837 (3d Cir. 2023) (noting that "an alternative remedy need not provide 'complete relief' or be as 'effective as an individual damages remedy' to foreclose *Bivens* relief" (quoting *Egbert*, 596 U.S. at 493, 498)).

case, Nero could have asserted (and may still be able to assert) state-law medical malpractice claims against the USP Canaan medical providers through the FTCA.[45]

In sum, Nero's Eighth Amendment claims would extend *Bivens* to a new context, yet special factors counsel against such an extension. The Court will therefore dismiss Nero's *Bivens* claims pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## B.   Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[46] Here, leave to amend will be denied as futile.[47] Nero seeks an extension of *Bivens* that is both judicially disfavored and unwarranted under the circumstances.

To the extent that Nero desires to assert a claim under the FTCA, the Court admonishes Nero that he is free to bring such an action so long as he is pursuing appropriate claims and has properly exhausted those claims through the correct administrative process.

---

[45] *See, e.g.*, *Wilson v. United States*, 79 F.4th 312, 315 (3d Cir. 2023) (discussing FTCA claim of medical malpractice under Pennsylvania law raised by detainee in federal detention center).

[46] *Grayson*, 293 F.3d at 114.

[47] *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation omitted)); *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").

"The FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment."[48]  "[T]he FTCA does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court.  Thus, 'the extent of the United States' liability under the FTCA is generally determined by reference to state law.'"[49]

An FTCA claim against the United States is "forever barred" unless it is presented to the appropriate federal agency "within two years after such claim accrues[.]"[50]  When an FTCA claim accrues is a question of federal law.[51]  If the claim is administratively denied, it must be brought in federal court within six months from the date "of notice of final denial of the claim by the agency to which it was presented."[52]  An FTCA claimant must file "*both* a claim with the federal agency within two years of the tort *and* suit within six months of the agency's denial" of that claim.[53]

---

[48]  *Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018); *see also* 28 U.S.C. § 1346(b)(1).

[49]  *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 361-62 (3d Cir. 2001) (quoting *Reo v. U.S. Postal Serv.*, 98 F.3d 73, 75 (3d Cir. 1996)).

[50]  *Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 270 (3d Cir. 2006) (quoting 28 U.S.C. § 2401(b)).

[51]  *See id.* (citing *Tyminski v. United States*, 481 F.2d 257, 262-63 (3d Cir. 1973)).

[52]  28 U.S.C. § 2401(b).

[53]  *Sconiers v. United States*, 896 F.3d 595, 598 (3d Cir. 2018).

From Nero's complaint and its attachments, it appears that he has pursued administrative remedies for his constitutional tort claims through the BOP's administrative review process.[54]  This is not the same as properly exhausting a state-law tort claim against the United States through the FTCA's administrative process.  Nero, if he desires to file an FTCA lawsuit, must pursue appropriate FTCA administrative remedies first,[55] because exhaustion of FTCA claims is jurisdictional in nature and cannot be waived.[56]

## IV.    CONCLUSION

Based on the foregoing, the Court is constrained to dismiss with prejudice Nero's *Bivens* complaint pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to plausibly state a claim for relief.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[54]  *See* Doc. 1 at 3, 7-11.
[55]  *See* 28 U.S.C. § 2675(a).
[56]  *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015); *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) (citation omitted).